## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| HO WAN KWOK, *et al.*, ) | Case No. 22-50073 (JAM) |
| ) | |
| Debtors. ) | (Jointly Administered) |
| ) | |
| LUC A. DESPINS, CHAPTER 11 TRUSTEE FOR ) | Adv. P. No. 23-05017 (JAM) |
| THE ESTATE OF HO WAN KWOK, ) | |
| ) | Re: ECF No. 4 |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| TAURUS FUND LLC; SCOTT BARNETT, AS ) | |
| TRUSTEE FOR TAURUS FUND LLC; and ) | |
| TAURUS MANAGEMENT LLC, AS TRUSTEE ) | |
| FOR TAURUS FUND LLC, ) | |
| ) | |
| Defendants. ) | |

## APPEARANCES

Luc A. Despins                     Douglas S. Skalka
Avram E. Luft (argued)             Patrick R. Linsey
G. Alexander Bongartz              Dennis M. Carnelli
Douglass E. Barron                 Neubert, Pepe & Montieth
Paul Hastings LLP                  195 Church Street, 13th Floor
200 Park Avenue                    New Haven, CT 06510
New York, NY 10166

    and

Nicholas A. Bassett (argued)
Paul Hastings LLP
2050 M Street NW
Washington, D.C. 20036

*Counsel for Plaintiff Luc A. Despins, Chapter 11 Trustee for the Estate of Ho Wan Kwok*

Michael T. Conway (argued)
Lazare Potter Giacovas & Moyle LLP
747 Third Avenue, 16th Floor
New York, NY 10017

*Counsel for Defendants Taurus Fund LLC and Taurus Management LLC, as Trustee for Taurus Fund LLC*

## MEMORANDUM OF DECISION AND ORDER
## <u>GRANTING IN PART MOTION FOR PRELIMINARY INJUNCTION</u>

Julie A. Manning, United States Bankruptcy Judge

## I. INTRODUCTION

Before the Court is the *Ex Parte* Motion for Temporary Restraining Order and

Preliminary Injunction (in pertinent part, the "PI Motion"), (ECF No. 4[1]), filed by Mr. Luc A.

Despins, in his capacity as Chapter 11 trustee (the "Trustee") for the bankruptcy estate (the

"Estate") of Mr. Ho Wan Kwok (the "Individual Debtor").[2]  The PI Motion seeks an order (i)

preliminarily enjoining Taurus Fund LLC ("Taurus Fund"); Mr. Scott Barnett, as trustee and/or a

member and/or manager of Taurus Fund; and Taurus Management LLC, as trustee and/or a

member and/or manager of Taurus Fund ("Taurus Management," collectively with Taurus Fund,

the "Corporate Defendants," and the Corporate Defendants collectively with Defendant Barnett,

the "Defendants"), from encumbering, transferring, dissipating, or otherwise interfering with the

real property at 675 Ramapo Valley Road, Mahwah, New Jersey 07430 (the "Mahwah

Mansion") and all other property of Taurus Fund; (ii) restricting access to the Mahwah Mansion;

and (iii) directing the United States Marshals Service to assist the Trustee in implementing any

---

[1]  References to the docket in this adversary proceeding will be styled "ECF." References to the docket in the main case, *In re Kwok*, Case No. 22-50073, will be styled "Main Case ECF."
[2]  The Individual Debtor's Chinese name is pronounced Guo Wengui in Mandarin Chinese and Kwok Ho Wan in Cantonese Chinese.  Guo/Kwok is the Debtor's family name and Wengui/Ho Wan is his given name and the Individual Debtor is alternatively known by the English standard name order, such as Ho Wan Kwok as on his bankruptcy petition.  The Individual Debtor is also known, among other names, as Miles Kwok or Miles Guo.

order granting the PI Motion.  For the reasons stated below, the PI Motion is **GRANTED IN PART**.

## II.  BACKGROUND

The Individual Debtor filed a voluntary Chapter 11 petition in this Court on February 15, 2022.  (Main Case ECF No. 1.)  The Individual Debtor's case is jointly administered with two affiliated corporate Chapter 11 cases.  (Main Case ECF Nos. 970 & 1141.)  For the reasons set forth therein, on June 15, 2022, the Court issued a memorandum of decision and order appointing a Chapter 11 trustee.  (Main Case ECF No. 465.)  *In re Kwok*, 640 B.R. 514 (Bankr. D. Conn. 2022).  On July 8, 2022, Mr. Despins was appointed as the Trustee.  (Main Case ECF No. 523.)

On March 15, 2023, at the start of an evidentiary hearing in another related adversary proceeding, the Individual Debtor's counsel informed the Court that an indictment against the Individual Debtor had been unsealed in the United States District Court for the Southern District of New York and the Federal Bureau of Investigation (the "FBI") had arrested the Individual Debtor earlier that morning.  The Mahwah Mansion is referenced in the indictment.  (*United States v. Kwok*, Case No. 23 Cr. 118 (AT) (S.D.N.Y. Mar. 6, 2023), ECF No. 2, at 36.)

On July 11, 2023, the Trustee filed a complaint (the "Complaint") against the Defendants. (ECF No. 1.)  The Complaint seeks: (a) a declaratory judgment that: (i) the Individual Debtor is the equitable owner of the Mahwah Mansion; (ii) the Individual Debtor is the equitable owner of Taurus Fund; and (iii) Taurus Fund is the *alter ego* of the Individual Debtor; and (b) on these respective bases, an order under 11 U.S.C. §§ 541, 542, and 544 requiring turnover to the Estate and delivery to the Trustee of: (i) the Mahwah Mansion and all fixtures and personal property inside the Mahwah Mansion; (ii) any membership interest or other ownership interest in Taurus

3

Fund; and (iii) all Taurus Fund's assets.  (*Id.*)  Also on July 11, 2023, the Trustee filed the PI

Motion, the Affidavit of Chapter 11 Trustee (the "Despins Affidavit"), and the Certification of

Douglass E. Barron (the "Barron Certification").  (ECF Nos. 4–6.)

On August 1, 2023, the Court issued the Order Granting In Part *Ex Parte* Motion for

Temporary Restraining Order (the "TRO").  (ECF No. 17.)  Pursuant to Fed. R. Civ. P. 65(b)(2),

made applicable in this adversary proceeding by Fed. R. Bankr. P. 7065, the TRO scheduled the

PI Motion for hearing on August 14, 2023.  In light of that hearing date, the Court set a response

date of August 9, 2023 for the Defendants.  No response or objection was timely filed by any of

the Defendants.  Moreover, the Defendants failed to timely make disclosures required by the

TRO.

On August 10, 2023, the Trustee filed a Request for a Status Conference, which inquired

whether the PI Motion hearing should be held given the lack of response from the Defendants.

(ECF No. 20.)  On August 11, 2023, the Court denied the Request for a Status Conference and

stated the hearing on the PI Motion would be held as scheduled.  (ECF No. 21.)  On August 14,

2023, the Trustee filed an exhibit list and his exhibits.  (ECF No. 23.)

On August 14, 2023, the hearing was held on the PI Motion.  During the hearing,

testimony was heard from the Trustee and an attorney for the Trustee who performed certain

translations of video exhibits.  The Trustee's Exhibits 1 through 6 and 9 through 29 were

introduced into evidence as full exhibits.

Defendant Barnett did not appear personally or through counsel at the hearing.  However,

the Corporate Defendants appeared through counsel who was permitted to make argument,

object to evidence, cross-exam witnesses, and present evidence.  The Corporate Defendants

declined to present evidence during the hearing, but requested a continuance and the opportunity

to develop argument and evidence.  The Court denied the request for a continuance on the record
and in its subsequent order extending the TRO because the TRO was properly served on all of
the Defendants and they failed to comply with the filing deadlines set forth in the TRO.  (ECF
No. 34.)  After the hearing, the Corporate Defendants submitted a letter with an attached exhibit.
(ECF No. 32.)

On August 21, 2023, the Corporate Defendants filed the Response re: TRO (the
"Response to TRO"), which identifies assets of Taurus Fund and/or personalty and fixtures in or
on the Mahwah Mansion.  (ECF No. 44.)

The PI Motion is ripe for decision.

## III.  JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over this
matter pursuant to 28 U.S.C. § 1334(b).  This Court has authority to hear and determine this
matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the United States District
Court for the District of Connecticut dated September 21, 1984.  The instant proceedings are
statutorily core proceedings.  28 U.S.C. § 157(b)(2)(A), (E), (O).  The PI Motion implicates no
constitutional concerns precluding this Court's exercise of jurisdiction.  *Cf. Stern v. Marshall*,
564 U.S. 462, 487–99 (2011).

Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## IV.  DISCUSSION[3]

### A. Preliminary Injunction

The general standard for Fed. R. Civ. P. 65(a) preliminary injunctive relief in the Second
Circuit is "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2)

---

[3]  The following constitutes the findings of fact and conclusions of law of the Court pursuant to
Rule 7052 of the Federal Rules of Bankruptcy Procedure.

sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979); *see Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35–38 (2d Cir. 2010) (holding *Jackson Dairy* remained the law of the Second Circuit); *see also Mendez v. Banks*, 65 F.4th 56, 63 (2d Cir. 2023).

### i. Irreparable Harm

Irreparable harm is the most important element of a TRO.  *See Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009).  Irreparable harm must be "likely," not merely possible.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  While outside of bankruptcy proceedings, irreparable harm generally must be the sort that cannot be adequately compensated by legal remedies, *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 333 (1999) (holding that a district court "had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages"), this rule does not necessarily apply in bankruptcy proceedings because "[t]he law of fraudulent conveyances and bankruptcy was developed to prevent [the disposition of assets pending adjudication]," *Grupo Mexicano*, 527 U.S. at 322.  *See Rubin v. Pringle ex rel. Focus Media Inc. (In re Focus Media Inc.)*, 387 F.3d 1077 (9th Cir. 2004); *Ball ex rel. Soundview Elite Ltd. v. Soundview Composite Ltd. (In re Soundview Elite Ltd.)*, 543 B.R. 78, 119 (Bankr. S.D.N.Y. 2016); *see also In re Owens Corning*, 419 F.3d 195, 208 n. 14 (3d Cir. 2005).

The Trustee argues that the Estate will likely be irreparably harmed absent the entry of a preliminary injunction.  In support of his argument, the Trustee asserts there is a risk of

dissipation of personalty and/or damage to the realty and personalty at the Mahwah Mansion because the Defendants are allowing extensive access to the Mahwah Mansion to certain individuals affiliated with the New Federal State of China (the "NFSC"), the Whistleblower Movement, and various Himalaya "farms," none of whom have a legal or equitable interest in the Mahwah Mansion.

In particular, the Trustee argues (i) the context of these Chapter 11 cases and related adversary proceedings demonstrate these individuals and entities are strongly opposed to the Trustee's attempts to marshal the Individual Debtor's assets for the benefit of his creditors and will likely seek to prevent the Trustee from seizing assets should it appear he will prevail in this adversary proceeding; and (ii) the amount of people passing through the Mahwah Mansion who have no property interest in it poses a risk of damage or dissipation regardless of their intent. The Trustee asserts that these individuals and entities are likely judgment proof.  Similarly, the Trustee argues that the Corporate Defendants are judgment proof because if the Trustee succeeds, all assets that could satisfy the Estate for any damage or dissipation would be assets of the Estate.  The Trustee additionally argues that the corporate status of the Taurus Fund is in default under Nevada law, meaning its members can liquidate and distribute its assets at any time.

In response, the Corporate Defendants argue that the property is being used as intended, and assets are not being dissipated or damaged and will not be dissipated or damaged going forward.  The Corporate Defendants argue that the Trustee has put forward no evidence of dissipation or damage.  Regarding the corporate status of Taurus Fund, after the hearing, the Corporate Defendants submitted a letter to the Court with an exhibit purporting to show that, during the hearing, Taurus Fund cured its corporate status default under Nevada law.

The Court agrees with the Trustee that the specific facts and circumstances of these Chapter 11 cases and related adversary proceedings are relevant to determining whether there is likely irreparable harm to the Estate.  *See Conn. Gen. Life Ins. Co. v. New Images*, 321 F.3d 878, 881–82 (9th Cir. 2003) (holding that district court in granting injunctive relief correctly considered prior contempt involving concealment of assets during discovery as it is relevant to future concealment or dissipation of assets).  This Court has previously found that, among others, the NFSC, the Whistleblower Movement, and the Himalaya "farms" engaged in a social media harassment and protest campaign targeted at the Trustee's investigation of the Individual Debtor's assets and creditor participation in these Chapter 11 cases.  (Corrected Memorandum of Decision (the "Social Media/Protest Decision"), *Pac. All. Asia Opportunity Fund v. Kwok (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 22-05032 (JAM) (Bankr. D. Conn. Jan. 13, 2023) (hereinafter, the "Social Media/Protest Adversary"), ECF No. 133 ¶¶ 1–77.)  Recently, the United States District Court for the Southern District of New York sanctioned certain individuals associated with these movements and their lawyer for frivolous litigation targeting the Trustee. (*An v. Despins*, Case No. 22-CV-10062 (VEC) (S.D.N.Y. Aug. 2, 2023), ECF No. 29; *see* Main Case ECF No. 2043.)

The Trustee's evidence supports a finding of irreparable harm.  Exhibit 21 is a video posted on April 12, 2023 on Gettr by the @chinatruth2022 account, which at the time of capture, bore the display name NFSCTV and was a verified account.[4]  The video shows a woman who appears to be Pamela "Nicole" Tsai – whom this Court has previously enjoined, (*see* Social Media/Protest Adversary, ECF No. 134 ¶ 5) – holding a microphone emblazoned with NFSC and

---

[4]  The @chinatruth2022 account has previously been at issue in these Chapter 11 cases and related adversary proceedings and may have been formerly the @Miles account of the Individual Debtor.  *See* Social Media/Protest Decision ¶¶ 16–19, 21, 39, 39 n. 10.

interviewing a man referred to as "Changdao Brother" at what is recognizable as the Mahwah Mansion as pictured in Exhibit 11.

In addition, Exhibits 24 through 26 are videos posted on https://nfscofficial.com/, each with an internal date stamp of April 9, 2023.  Exhibit 24 shows numerous individuals entering and exiting the Mahwah Mansion.  Exhibits 25 and 26 show individuals inside the Mahwah Mansion professing membership and support for the NFSC, the Whistleblower Movement, and/or the Himalaya "farms" and making remarks in support of the Individual Debtor.  Many of the individuals appearing in Exhibits 25 and 26 appear to be wearing G-Fashion.  (*See* Social Media/Protest Decision ¶¶ 2, 3.)  Exhibits 24 through 26 each end with an animation of a chain being broken and the resulting sparks forming the logo of the NFSC with the words "Free Miles Guo."

Furthermore, Exhibit 27 is a video posted by the @chinatruth2022 Gettr account.  While the entire video runs for nearly 8 hours, during the hearing the Trustee displayed a short clip depicting people introduced as the local leaders of the global "farms" related to the NFSC in the same room shown in Exhibits 25 and 26.  A woman professing to be the head of the NFSC chapter in Germany spoke about the Mahwah Mansion – the "base" of the NFSC – and her support for the Individual Debtor.

The Trustee testified that NFSC livestreams from the Mahwah Mansion and/or events at the Mahwah Mansion are occurring on at least a weekly basis.  (Hr'g, at 3:17:29–3:20:48 p.m.)  The Trustee also testified that one such event was an anniversary event for the NFSC, which is depicted in Exhibit 27.  (Hr'g at 3:16:12–3:17:14 p.m.)  Counsel for the Corporate Defendants represented that the individuals in Exhibits 21, 24, 25, 26, and 27 are not his clients and he does not know them.

The Court finds that the Mahwah Mansion is being made available to myriad individuals who are members of entities other than Taurus Fund – the record owner of the Mahwah Mansion. The Court has found that the members of these other entities seek to obstruct, on direction from the Individual Debtor, the Trustee's investigation and harass the Trustee and creditors on account of their participation in these Chapter 11 cases and related adversary proceedings. (*See* Social Media/Protest Decision ¶¶ 1–77; *see also*, Main Case ECF No. 2043.)

Moreover, the history of these Chapter 11 cases and related adversary proceedings is replete with instances of discovery abuse and contempt of court related to the Trustee's efforts to gain possession and control of what he asserts are Estate assets. (*See* Main Case ECF Nos. 1372, 1537, 1709, 1892, 2009, 2035, 2093.) In addition, as noted throughout the record in these cases, the Supreme Court of New York assessed a contempt fine of more than $130 million against the Individual Debtor related to efforts to keep assets from his creditors. (*Pacific Alliance Asia Opportunity Fund, L.P. v. Kwok Ho Wan*, Index No. 652077/2017 (N.Y. Sup. Ct. Feb. 9, 2022), NYCEF No. 1181.)

Regarding Taurus Fund in particular, the Trustee alleges that a Bösendorfer grand piano designed by F.A. Porsche (the "Porsche Piano") owned by Taurus Fund and worth more than $250,000, has disappeared from the office space at 3 Columbus Circle, New York, New York (the "G-Series Office"). (Complaint ¶ 23.) The personalty at the G-Series Office is properly in the custody and control of the assignee (the "Assignee") for the benefit of creditors for HCHK Technologies, Inc., HCHK Property Management, Inc., and Lexington Property and Staffing, Inc. (collectively, the "HCHK Entities"), who has settled with the Trustee and agreed not to dispute the Estate's claim to all of the HCHK Entities' assets. (Main Case ECF No. 2038.) The Court also notes that the Defendants did not timely comply with the disclosure requirements of

the TRO regarding the property of Taurus Fund and the personalty and fixtures in or on the Mahwah Mansion. However, the Corporate Defendants filed the Response to TRO listing the assets of Taurus Fund after the PI hearing. (ECF No. 44.)

Taken together, the facts and circumstances of these Chapter 11 cases and related adversary proceedings support the Trustee's testimony that absent a preliminary injunction, Taurus Funds' assets are likely to be damaged and/or dissipated by the Defendants and/or the NFSC, the Whistleblower Movement, and/or the Himalaya "farms" and/or other parties affiliated with the Individual Debtor's interests. Damage to the Mahwah Mansion is particularly concerning given that, as established by Exhibit 10, it is on the National Register of Historic Places and must be maintained and repaired according to applicable standards. Moreover, if the Trustee is correct, all of Taurus Fund's assets are assets of the Estate and Taurus Fund has no property from which to make the Estate whole after dissipation or damage. Similarly, given the apparent value of some of the personalty in, on, or at the Mahwah Mansion – as seen in Exhibit 19 and as discussed by Ms. Tsai and Changdao Brother in Exhibit 21 – it is doubtful that a member of the NFSC, the Whistleblower Movement, and/or the Himalaya "farms" could make the Estate whole. In the context of bankruptcy, particularly where relief is sought in equity – here, through assertions of *alter ego* and beneficial ownership – the dissipation of or damage to assets of Taurus Fund pending a determination on the merits is irreparable harm. *Focus Media*, 387 F.3d at 1084–85; *Soundview Elite*, 543 B.R. at 119; *see Grupo Mexicano*, 527 U.S. at 322; *Owens Corning*, 419 F.3d at 208 n. 14. Because the Court has determined that irreparable harm exists, it does not need to address the Trustee's argument that the Estate faces likely irreparable harm because of Taurus Fund's corporate status default or the apparent curing by Taurus Fund of that default during the PI hearing.

11

### ii.  Likelihood of Success on the Merits or
### Sufficiently Serious Questions Going to the Merits

A likelihood of success on the merits is established where "the moving party is more likely than not to prevail on the merits of the underlying claims." *Citigroup*, 598 F.3d at 35.  In *Citigroup*, the Second Circuit explained the alternate "serious questions" standard as permitting a court "to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Id.* (internal citations omitted).  The Second Circuit continued: "Because the moving party must not only show that there are 'serious questions' going to the merits, but must additionally establish that 'the balance of hardships tips *decidedly*' in its favor its overall burden is no lighter than the one it bears under the 'likelihood of success' standard." *Id.* (internal citations omitted).  However, a likelihood of success on the merits or serious questions going to the merits, as applicable, need only be established as to one of the Trustee's claims. *See Youssef v. Sallie Mae, Inc. (In re Homaidan)*, 640 B.R. 810, 840 (Bankr. E.D.N.Y. 2022).

The Complaint seeks turnover to the Estate and delivery to the Trustee of assets under sections 541, 542, and 544 of the Bankruptcy Code.  These claims for relief implicate applicable non-bankruptcy *alter ego* and beneficial ownership law.  The Court considers the Trustee's three claims for relief and the applicable non-bankruptcy law governing the claims in turn.

### a.  Claim One: Beneficial Ownership of Mahwah Mansion

The Trustee argues that New Jersey law applies to the first claim.  The Court agrees. Unless there is an overriding federal policy interest, bankruptcy courts apply forum state choice-of-law rules to issues of state law. *Geron ex rel. Thelen LLP v. Seyfarth Shaw LLP (In re Thelen LLP)*, 736 F.3d 213, 219 (2d Cir. 2013).  Applicable non-bankruptcy real property law is

implicated by the Trustee's first claim for relief requesting: (i) declaratory judgment that the Individual Debtor is the equitable owner of the Mahwah Mansion; and (ii) an order under sections 541, 542, and 544 requiring turnover to the Estate and delivery to the Trustee of the Mahwah Mansion and all fixtures and personal property inside the Mahwah Mansion. The Court has not found any Connecticut case law setting forth the standard for choice of law regarding issues of property law. Connecticut applies the Restatement (Second) of Conflict of Laws with respect to tort and contract law. *Western Dermatology Consultants, P.C. v. VitalWorks, Inc.*, 153 A.3d 574, 584 (Conn. 2016); *Macomber v. Travelers Property & Casualty Corp.*, 894 A.2d 240, 256–57 (Conn. 2006). The Court concludes that Connecticut courts would likely apply the Restatement (Second) of Conflict of Laws with respect to property law as well. "The forum will attempt to determine questions as to the existence and extent of equitable interests in land in the same way that these questions would have been decided in the very case at hand by the courts of the situs," which is usually applicable local law. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 235 (2023). The property, real and personal, is located in New Jersey. Therefore, the Court concludes that New Jersey law applies to the Trustee's claim that the Individual Debtor beneficially owns the Mahwah Mansion.

Under New Jersey law, where a party "maintained *de facto* ownership and control over the properties" at issue and/or "provided the funds to purchase the properties" at issue, said party may beneficially own such properties, depending on the equities of the case. *In re NJ Affordable Homes Corp.*, Case No. 05-60442 (DHS), 2006 WL 2128624, at *8 (Bankr. D.N.J. 2006).

The Trustee argues that the Individual Debtor beneficially owns and controls the Mahwah Mansion because it is an exclusive residence of the Individual Debtor and his family. The Trustee argues this is demonstrated by the Individual Debtor's use of the Mahwah Mansion until

13

his arrest on March 15, 2023.  Moreover, the Trustee argues that after the Individual Debtor's arrest, the Mahwah Mansion has been used as a source of fundraising, by allowing supporters of the Individual Debtor to visit the Mahwah Mansion in return for membership in, *e.g.*, G-Club.

In response, the Corporate Defendants argue that the Individual Debtor does not beneficially own or control the Mahwah Mansion and does not reside in the Mahwah Mansion. The Corporate Defendants further argue that the Mahwah Mansion is a "club house" for G-Club and a meeting place for the NFSC.  (Hr'g at 12:34:46–12:35:11 p.m.)  The Corporate Defendants dispute that the Individual Debtor has any greater interest in the Mahwah Mansion than any other individual associated with G-Club or the NFSC and other affiliated entities.

The Court is persuaded by the Trustee's argument and evidence.  Included in Exhibit 2 is an Affidavit of Consideration for Use by Buyer (the "Affidavit") filed on the land records in connection with the recording of the deed conveying the Mahwah Mansion from Crocker Mansion Estate LLC to Taurus Fund.  The Affidavit lists the Mahwah Mansion as a residential property.  Similarly, the printout of the New Jersey tax records for the Mahwah Mansion included in Exhibit 2 indicates that, as of at least February 15, 2023, the Mahwah Mansion is classified as residential property.

Exhibits 13 through 19 are photographs of items observed by the FBI during its search of the Mahwah Mansion subsequent to the arrest of the Individual Debtor.  The Trustee testified the Department of Justice (the "DOJ") provided him with these photographs and some context surrounding each of them.  (Hr'g, at 2:01:52–2:03:51 p.m., 2:06:20–2:07:16 p.m., 2:15:30–2:15:59 p.m.)  The contents of these Exhibits are as follows:

(i)  Exhibit 13 shows the inside pocket of a suit jacket.  Stitched into the suit is stylized text reading "Brioni/Su Misura for Miles Kwok."  According to the DOJ, twenty-nine suits with this label were discovered in the Mahwah Mansion.

14

(ii)  Exhibit 14 shows an interim New York state driver's permit for "Ho Wan Kwok," a New York state learner permit for "Ho Wan Kwok," and a Hong King Special Administrative Region driver's license for "Ho Wan Kwok."  The image on the New York learner permit appears to be the Individual Debtor.

(iii)  Exhibit 15 shows three intimate photos that appear to be family photographs. Two of them appear to include the Individual Debtor.  The third appears to show individuals pictured together with the Individual Debtor in the other two.  Exhibit 16 is a certificate of authenticity for a Ferrari 488 Pisto with an accompanying letter regarding the Ferrari made out to a "Mr. Guo."

(iv)  Exhibit 17 is a photo of a prescription pill bottle prescribed to "Ho Wan Kwok."

(v)  Exhibit 18 is a photo of a Hong Kong Special Administrative Region permanent identity card for "Ho Wan Kwok."  The picture on the permanent identity card appears to be the Individual Debtor as a younger man.

(vi)  Exhibit 19 is an invoice from Cedric Dupont Antiques made out to Taurus Fund regarding several pieces of furniture with handwritten notes seeming to describe where the purchased items are to be placed.  A "beautiful Italian 18th century, circa 1780, giltwood mirror from Tuscany" is to be placed in "Boss's bedroom."  A "grand scale and most impressive French mid 19th century Louis XV st. giltwood mirror with the original mirror plate and all exquisite [sic]" is to be placed in "Mei's bedroom."  Mei is the given name of the Individual Debtor's daughter, Ms. Mei Guo.

In addition to the items recovered by the FBI at the Mahwah Mansion, Exhibit 12 is a LexisNexis SmartLinx Report created for the Trustee on July 11, 2023, which lists the Mahwah Mansion as the Individual Debtor's address.

Exhibits 22 and 23 are videos posted on the @milesguo Gettr account[5], which bears the display name "MILES GUO" and a profile picture that appears to be the Individual Debtor, on January 11, 2023 and February 19, 2023, respectively.  In both videos, the Individual Debtor is broadcasting from what appears to be the same room inside the Mahwah Mansion that is shown in Exhibits 25 and 26, as well as the displayed portion of Exhibit 27.

---

[5]  It is unclear if this is the same as the @MilesGuo Gettr account with the same display name and profile picture, which was at issue in the Social Media/Protest Adversary.  (Social Media/Protest Decision ¶¶ 16–17, 19–21.)

Exhibit 21, discussed above, shows Ms. Tsai and Changdao Brother discussing in Mandarin Chinese how the Individual Debtor personally selected the Mahwah Mansion according to principles of fengshui and his own "impeccable taste," (which is stated in English) and purchased the Mahwah Mansion to serve as a secret base for the NFSC. Ms. Tsai and Changdao Brother go on to discuss how the Individual Debtor is the only one who knows the history of the very valuable antiques inside the Mahwah Mansion because they were "donated" by the Individual Debtor's family fund. Exhibits 24 through 26, discussed above, show individuals stating they are members of the NFSC, the Whistleblower Movement, and/or the Himalaya "farms" who profess gratitude to the Individual Debtor regarding the Mahwah Mansion and support for the Individual Debtor.

No contradictory evidence was introduced with respect to these Exhibits. On the basis of this evidence, the Court finds it is more likely than not that (i) the Mahwah Mansion is a residence, not a club house or a meeting place; and (ii) the Mahwah Mansion is a residence of the Individual Debtor and he has *de facto* control over the Mahwah Mansion and benefit of use of the Mahwah Mansion. *See NJ Affordable Homes*, 2006 WL 2128624, at *8. Therefore, the Court concludes it is more likely than not that the Individual Debtor is the beneficial owner of and controls the Mahwah Mansion.

### b. Claims Two and Three: *Alter Ego* and Beneficial Ownership of Taurus Fund

The Trustee argues that Nevada law applies to his second and third claims. The Court agrees. As noted above, the Court applies the choice of law rules of Connecticut. *Thelen LLP*, 736 F.3d at 219. Applicable non-bankruptcy corporate law is implicated by the Trustee's second and third claims for relief, respectively requesting (i) a declaratory judgment that the Individual Debtor is the equitable owner of Taurus Fund and, on that basis, an order under sections 541,

16

542, and 544 requiring turnover to the Estate and delivery to the Trustee of any membership interest or other ownership interest in Taurus Fund; and (ii) a declaratory judgment that Taurus Fund is the *alter ego* of the Individual Debtor and, on that basis, an order under sections 541, 542, and 544 requiring turnover to the Estate and delivery to the Trustee of all Taurus Fund's assets.  Under Connecticut law, "[t]he law of the governing jurisdiction of a foreign limited liability company governs: (1) The internal affairs of the company; (2) the liability of a member as member and a manager as manager for a debt, obligation or other liability of the company; and (3) the liability of a series of the company."  Conn. Gen. Stat. § 34-275(a).  Based on the substantially similar statute in existence at the time, the Connecticut Supreme Court has ruled that the state of formation of a foreign limited liability company governs the issue of veil-piercing.  *Weber v. U.S. Sterling Securities, Inc.*, 924 A.2d 816, 822–23 (Conn. 2007).  The Court concludes that this reasoning would extend to beneficial ownership as well.  Taurus Fund is a Nevada LLC.  Therefore, Nevada law applies to the Trustee's assertions of *alter ego* and beneficial ownership of Taurus Fund.

Nevada law recognizes reverse veil-piercing where "the particular facts and equities show the existence of an alter ego relationship and require that the corporate fiction be ignored so that justice may be promoted," such as where a "'controlling party uses the controlled entity to hide assets or secretly to conduct business to avoid the pre-existing liability of the controlling party.'"  *LFC Mktg. Grp., Inc. v. Loomis*, 8 P.3d 841, 846 (Nev. 2000) (citing *Select Creations, Inc. v. Paliafito Am., Inc.*, 852 F. Supp. 740, 774 (E.D. Wis. 1994)).  Under Nevada law there are three elements of *alter ego*:

> (1) the corporation must be influenced and governed by the person asserted to be the alter ego; (2) there must be such unity of interest and ownership that one is inseparable from the other; and (3) the facts must be such that adherence to the corporate fiction of a separate entity would, under the circumstances, sanction fraud or promote injustice.

17

*Polaris Indus. Corp. v. Kaplan*, 747 P.2d 884, 886 (1987).  This test has been codified.  Nᴇᴠ.
Rᴇᴠ. Sᴛᴀᴛ. § 78.747 (2023).

Nevada law recognizes beneficial ownership of corporate entities.  *See, e.g.*, Nᴇᴠ. Rᴇᴠ.
Sᴛᴀᴛ. § 92A.440.  However, the Court has not identified any cases applying Nevada law setting
out elements for determining when a legal owner is in fact a nominee for another party seeking
to avoid liability.  Therefore, for purposes of the PI Motion, the Court applies federal common
law factors in making this determination.  *LiButti v. United States*, 968 F. Supp. 71, 75
(N.D.N.Y. 1997) (applying common law factors in determining whether an owner was a
nominee for the purposes of tax levy), *aff'd in part, rev'd in part on other grounds*, 178 F.3d 114
(2d Cir. 1999); *see Paloian ex rel. Dordevic v. Dordevic (In re Dordevic)*, 633 B.R. 553, 558
(Bankr. N.D. Ill. 2021) (using common law nominee factors in a bankruptcy proceeding), *aff'd
by* 20 b 9807, 21 C5328, 2022 WL 19638995 (N.D. Ill. July 25, 2022), *aff'd by* 67 F.4th 372 (7th
Cir. 2023).  The federal elements of beneficial ownership are:

> (1) whether inadequate or no consideration was paid by the nominee; (2) whether
> the property was placed in the nominee's name in anticipation of a lawsuit or
> other liability while the transferor remains in control of the property; (3) whether
> there is a close relationship between the nominee and the transferor; (4) whether
> they failed to record the conveyance; (5) whether the transferor retains
> possession; and (6) whether the transferor continues to enjoy the benefits of the
> transferred property.

*LiButti*, 968 F. Supp. at 75.

Both of these standards instruct the Court to focus on whether the Individual Debtor
exercises *de facto* dominion and control over the Mahwah Mansion and on whether Taurus
Fund's record ownership of the Mahwah Mansion promotes fraud or injustice.

The Trustee argues that the Individual Debtor is the *alter ego* of Taurus Fund and/or
beneficially owns and controls Taurus Fund and/or its assets, including the Mahwah Mansion,

the fixtures affixed to the Mahwah Mansion, and any personalty in, on, or at the Mahwah Mansion. The Trustee further argues that the Mahwah Mansion is a residence of the Individual Debtor and that the purpose of Taurus Fund and its ownership of the Mahwah Mansion is to shield the Mahwah Mansion and its contents from the Individual Debtor's creditors.

In response, the Corporate Defendants make the same arguments regarding the purpose of the Mahwah Mansion. They argue that the Mahwah Mansion is a club house, meeting place, or secret base of a cluster of related anti-Chinese Communist Party entities – the NFSC, the Whistleblower Movement, the Himalaya "farms," and G-Club – and it is not a residential property, let alone the Individual Debtor's residence.

The Trustee's arguments continue to be persuasive. Taurus Fund is the record owner of the Mahwah Mansion as evidenced by the deed included in Exhibit 2. As stated above, the Court finds that it is more likely than not that the Individual Debtor beneficially owns and controls the Mahwah Mansion. There is no evidence establishing a separate business purpose for Taurus Fund other than ownership of the Mahwah Mansion. Indeed, the tardily filed Response to TRO, which lists the assets of Taurus Fund as the Mahwah Mansion and personalty described as furniture and other household items – admittedly expensive and luxurious items, supports this conclusion.

Additionally, Taurus Fund's Articles of Organization, which are included in Exhibit 3, list its managers and/or managing members as Taurus Management and Defendant Barnett. Defendant Barnett signed the articles as a "Manager" or "Member." Exhibit 5 is an email from the Individual Debtor's counsel describing Defendant Barnett as working security for the Individual Debtor. Exhibit 6 is an insurance policy in which Defendant Barnett is listed as a registered driver on a vehicle owned by Golden Spring (New York) Limited ("Golden Spring").

The Court finds that Golden Spring is associated with the Individual Debtor for many reasons. First, Golden Spring has previously paid for the Individual Debtor's expenses. (Kwok Testimony, Main Case ECF No. 318, at 146:25–149:5.) Second, Golden Spring was the proposed source of debtor-in-possession financing in the amount of $8,000,000 (Main Case ECF No. 117 ¶ 1), as well as a proposed funding source of the Individual Debtor's proposed Chapter 11 plan (Main Case ECF No. 197). Third, Attorney Stephen Kindseth, one of the Individual Debtor's bankruptcy counsel, informed the Court that Golden Spring's general counsel was involved in hiring the Individual Debtor's special counsel in the Social Media/Protest Adversary. (Social Media/Protest Adversary, ECF No. 94, at 2:24–5:10.) Finally, Golden Spring has been held in contempt of court for failing to respond to the Trustee's Rule 2004 subpoena regarding the Individual Debtor's assets, liabilities, and financial affairs. (Main Case ECF No. 1709.) For all of these reasons, Exhibits 5 and 6 establish that Defendant Barnett is or was the Individual Debtor's chauffeur and bodyguard.

Because (i) the only purpose of Taurus Fund established by the record is ownership of the Mahwah Mansion, which is more likely than not beneficially owned and controlled by the Individual Debtor; and (ii) Taurus Fund is more likely than not nominally owned by the Individual Debtor's employee, it is more likely than not that Taurus Fund serves to shield assets of the Individual Debtor from his creditors. Therefore, Taurus Fund is more likely than not the Individual Debtor's *alter ego* and/or beneficially owned and controlled by the Individual Debtor. *See Polaris Indus.*, 747 P.2d at 886; *LiButti*, 968 F. Supp. at 75.

### iii.  Balance of the Hardships

The Trustee argues that the Defendants, as the ostensible owners of the Mahwah Mansion, should agree that the Mahwah Mansion, the fixtures thereto, and the personalty therein and thereon need to be safeguarded, but are inexplicably resisting securing the Mahwah Mansion and related property.  The Corporate Defendants respond that the Trustee is seeking to lock out the owner of the Mahwah Mansion and interrupt its enjoyment of its property rights.  The Corporate Defendants argue that the preliminary injunction the Trustee seeks would not preserve but would instead alter the *status quo*.

No evidence or argument was presented contending that the Defendants ever occupied or used the Mahwah Mansion.  Instead, the evidence presented demonstrates that the NFSC and associated individuals and entities are occupying and using the Mahwah Mansion.  Furthermore, the Corporate Defendants introduced no evidence to dispute the Trustee's assertion that they are not being paid rent for the use of the Mahwah Mansion by the NFSC and associated individuals and entities.  The Corporate Defendants also did not introduce evidence that the Defendants have undertaken any efforts to secure and preserve the Mahwah Mansion or other assets.  As noted above, until the day of the PI hearing, Taurus Fund was in corporate default.  For these reasons, the Court concludes that a preliminary injunction would do little, if anything, to interrupt the Defendants' enjoyment of the Mahwah Mansion.

The Trustee additionally argues that prior to the Individual Debtor's arrest on March 15, 2023, the Mahwah Mansion was not being utilized by myriad individuals associated with the NFSC, the Whistleblower Movement, and/or the Himalaya "farms."  The Corporate Defendants respond that until after the Individual Debtor's arrest, the state of renovations at the Mahwah

Mansion prevented it from being used as a club house for the NFSC and associated individuals and entities.

For the reasons stated above, and in accordance with the evidence introduced by the Trustee, the Court concludes that it is more likely than not that the Mahwah Mansion is a personal residence of the Individual Debtor and his family, not a club house for the NFSC and associated individuals and entities. Furthermore, in Exhibit 21 Ms. Tsai and Changdao Brother state that the Mahwah Mansion was *unknown* to the NFSC and associated individuals and entities until April 9, 2023. Therefore, the Court concludes that the *status quo* is being altered by the presence of the NFSC and associated individuals and entities in, on, or at the Mahwah Mansion.

For both of these reasons, the Court concludes that the likely irreparable harm discussed above decidedly outweighs any harm to the Defendants caused by an injunction. Therefore, in establishing a likelihood of success on the merits, the Trustee has exceeded his burden to show serious questions going to the merits under *Jackson Dairy*.

## V. CONCLUSION AND ORDER

For the reasons stated above, the Court, concluding that the Trustee has established likely irreparable harm and a likelihood of success on the merits, issues a preliminary injunction as set forth below. The Court does not rule on the additional relief requested by the Trustee at this time, but may do so in the future if necessary and appropriate. Accordingly, it is hereby

**ORDERED:** Pursuant to Fed. R. Civ. P. 65(b), effective immediately, the Defendants shall not transfer, encumber, move, dispose of, or in any way impair (i) any membership interest or other ownership interest of any kind in Taurus Fund; (ii) any asset or property of Taurus Fund,

including the Mahwah Mansion; and/or (iii) any personalty and/or fixtures in, on, or at the Mahwah Mansion, until further order of the Court; and it is further

**ORDERED:**  Pursuant to Fed. R. Civ. P. 65(d)(2), effective immediately, this Order is binding on (i) the Defendants; (ii) the Defendants' officers, agents, servants, employees, and attorneys; and (iii) other persons who are in active participation with the Defendants and/or the Defendants' officers, agents, servants, employees, and attorneys, including, without limitation, the Individual Debtor, Pamela Tsai, a/k/a Nicole, Qidong Xia, a/k/a Changdao Brother and David Xia, each of whom is directed to comply with the terms of this Order; and it is further

**ORDERED:**  At or before 5:00 p.m. on August 28, 2023, the Defendants shall file proof of insurance for (i) all assets and property of Taurus Fund, including the Mahwah Mansion; and (ii) all personalty and/or fixtures in, on, or at the Mahwah Mansion; and it is further

**ORDERED:**  On or before September 1, 2023, the Defendants shall (i) collect, account for, and restrict access to all keys to and access devices for the Mahwah Mansion; (ii) restrict access to the grounds, interior, and all property of the Mahwah Mansion to no more than twenty (20) people, except (a) the Security Services (defined below); (b) the Trustee and his representatives and/or professionals; (c) the United States Department of Justice and its employees and representatives; (d) the FBI and its employees and representatives; (e) other federal, New Jersey state, or Mahwah municipal law enforcement agencies and their employees and representatives; (f) any other persons expressly authorized by the Trustee in writing (which can include email); and (g) any other person expressly authorized by the United States District Court for the Southern District for New York or this Court to access the Mahwah Mansion shall not count towards said twenty (20) people, unless cause is found by the Court upon motion by the Defendants to allow a larger group access to the grounds, interior, and all property of the

23

Mahwah Mansion on a particular occasion; and (iii) secure and safeguard any and all assets or property of Taurus Fund, including the Mahwah Mansion, and/or any and all personalty and/or fixtures in, on, or at the Mahwah Mansion; and it is further

**ORDERED:**  On or before September 1, 2023, Defendants shall employ security services (the "Security Services") for the Mahwah Mansion with the approval, not to be unreasonably withheld, of the Trustee and shall file proof of such employment on the docket of this adversary proceeding.  The Security Services must (i) log all persons entering and exiting grounds, interior, and all property of the Mahwah Mansion; (ii) supervise visitors to the grounds, interior, and all property of the Mahwah Mansion; (iii) secure and safeguard any and all assets or property of Taurus Fund, including the Mahwah Mansion, and/or any and all any and all personalty and/or fixtures in, on, or at the Mahwah Mansion; and (iv) notify the Defendants and the Trustee of any damage or dissipation of any assets or property of Taurus Fund, including the Mahwah Mansion, and/or any personalty and/or fixtures in, on, or at the Mahwah Mansion; and it is further

**ORDERED:**  Prior to employment, the Defendants shall provide the Security Services with this Order and, on or before September 8, 2023, Defendants shall file a declaration of a person from the Security Services with management responsibility for the services to be provided evidencing that the Security Services understands and will comply with the terms of this Order; and it is further

**ORDERED:**  Within three (3) days of discovery of (i) any assets or property of Taurus Fund in addition to those listed in the Response to TRO, (ECF No. 44); and/or (ii) any personalty and/or fixtures in, on, or at the Mahwah Mansion in addition to those listed in the Response to

TRO, (ECF No. 44), the Defendants shall disclose any such discovered assets to the Trustee and the Court; and it is further

**ORDERED:**  The Trustee is authorized to take all actions necessary to implement the terms of this Order; and it is further

**ORDERED:**  This Order is immediately enforceable; and it is further

**ORDERED:**  Pursuant to this Court's discretion to set or waive the amount of any bond to be posted under Fed. R. Civ. P. 65, the Trustee need not post a bond; and it is further

**ORDERED:**  The TRO is dissolved upon entry of this Order; and it is further

**ORDERED:**  On or before August 25, 2023, the Trustee shall serve this Order on Defendant Barnett and, on or before August 28, 2023, file a certificate of service evidencing compliance with this Order.

Dated at Bridgeport, Connecticut this 24th day of August, 2023.

Julie A. Manning
United States Bankruptcy Judge
District of Connecticut